878 F.2d 729
 58 USLW 2038, Fed. Sec. L. Rep. P 94,499
 BALLAY, Stephen J., Bandosz, Albert J., Beebee, Susan,
Beebee, Peter C., Behmer, L. Nelson, Behmer, Robert L.,
Bell, Elizabeth W., Broccolini, Agnes M., Burke, Jr., John
J., Zappitelli, Sophie Chelyk and John A., Deal, Richard A.,
Deal, Jr., William W., Dudugjian, Carl, as Trustee, Espinoza
(Schimmel), Bobbi S., Flamm, George G. Flansburg, Frank M.,
Gallagher, David G., and Jacqueline, Goldman, Arthur S.,
Gould, Herbert E., Hoover, Robert A., Jacobs, Richard W.,
Merriken, Charles J. and Phylliss A., Munger, Edith L.,
Persons, Jr., Oren M., Resnick, Albert, Richter, Ronald and
Lynn, Robinson, Edmund H., Smedley, L., as Trustee, Smith,
Allen and Christine, Uhrman, Gary H., Weyforth, Philip A.,
Williamson, Dennis, Zappitelli, Michael J. and Anna O.,
Zook, Dunwoody for Zook, Melissa D., and Zook, II, William
H.D. and Zook, Susanne C.
v.
LEGG MASON WOOD WALKER, INC., Appellant.
 No. 89-1042.
 United States Court of Appeals,
Third Circuit.
 Argued May 23, 1989.
Decided June 29, 1989.
 
 C. Clark Hodgson, Jr., John J. Murphy, III (argued), Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellant.
 William A. Destefano, Christopher D. Warren (argued), Destefano & Guernsey, Stephen M. Feldman, Philadelphia, Pa., for appellees.
 Before BECKER, STAPLETON and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This appeal presents a question of considerable current interest in the marketplace, whether a federal court may refuse to compel final and binding arbitration of a security customer's claims under the Securities Act of 1933 where the customer and the broker have entered into an agreement providing that disputes arising "under the federal securities laws" need not be arbitrated but could be litigated in the courts. Plaintiffs are investors who held trading accounts with defendant Legg Mason Wood Walker, Inc. (Legg Mason), a securities broker. After suffering losses in their accounts, plaintiffs brought suit, seeking damages, in the United States District Court for the Eastern District of Pennsylvania against Legg Mason, alleging, among other things, that Legg Mason violated sections 12(2) and 15 of the Securities Act of 1933, 15 U.S.C. Secs. 77l(2) and 77o. On the basis of an arbitration agreement executed by the parties in connection with plaintiffs' stock purchases, Legg Mason moved the district court to stay proceedings in that court and to compel arbitration of plaintiffs' claims. The district court denied the motion, and the defendant appealed. We affirm.
 
 I.
 
 2
 Plaintiffs are forty-one investing customers who allegedly suffered losses as a result of misrepresentations by Legg Mason concerning the book value of certain securities purchased by plaintiffs. In their complaint, plaintiffs charged Legg Mason with violations of sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. Secs. 78j(b) and 78t (Exchange Act), of sections 12(2) and 15 of the Securities Act of 1933, and of the common law.
 
 
 3
 When they opened their trading accounts with Legg Mason, sixteen of the forty-one plaintiffs signed customer agreements that contained an arbitration provision. The provision stated that disputes arising out of the purchase or sale of securities would be arbitrated, but added the qualification that disputes arising "under the federal securities laws" need not be arbitrated but could be litigated in the courts.[1] On the basis of this arbitration provision, Legg Mason moved the district court to stay proceedings and to compel arbitration of the sixteen plaintiffs' claims.
 
 
 4
 In its memorandum opinion and order, the district court partially granted and partially denied defendant's motion. On the authority of Dean Witter Reynolds v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the court held that the plaintiffs' common law claims must be arbitrated. Moreover, the district court held that under Shearson/American Express, Inc. v. Mahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), plaintiffs' claims under the Exchange Act of 1934 also had to be arbitrated. The district court, however, observed that despite the decisions allowing arbitration of state law claims and Exchange Act claims, the Supreme Court had not yet explicitly reversed its earlier decision in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held agreements to arbitrate claims under the Securities Act of 1933 unenforceable. The court therefore refused to compel arbitration of plaintiffs' claims arising under the Securities Act of 1933. Legg Mason appealed that portion of the district court's order.
 
 II.
 
 5
 As a preliminary matter, we address the appealability of the district court's order. Plaintiffs challenge our jurisdiction to consider an immediate appeal of the court's refusal to compel arbitration. Legg Mason moved to compel arbitration pursuant to section 4 of the Federal Arbitration Act (the Act). 9 U.S.C.A. Secs. 1-15 (West Supp.1989). The court's order denying the motion with respect to the Securities Act claims undisputedly was issued in context of an ongoing proceeding and was therefore interlocutory. Plaintiffs argue that the appeal provisions of the recently amended Arbitration Act, 9 U.S.C.A. Sec. 15 (West Supp.1989), do not provide for immediate appeal of an interlocutory order denying a motion to compel arbitration brought pursuant to section 4. They argue that section 4 contemplates the initiation of a separate action to compel arbitration, and that section 15 allows immediate appeal only of final orders denying section 4 motions that emanate from separate proceedings.
 
 
 6
 Section 15, enacted in November 1988 as part of the Judicial Improvements and Access to Justice Act, P.L. 100-702, outlines the principles governing appealability of orders and judgments relating to arbitration. The section provides that an appeal may be taken from an order refusing a stay of judicial action requested under section 3 or from an order denying a petition to compel arbitration under section 4 or from a final decision with respect to arbitration.[2] That section also describes the circumstances in which appeals may not be taken. It provides that appeals may not be taken from interlocutory orders granting a stay of action under section 3 or directing arbitration to proceed under section 4.[3]
 
 
 7
 The amendments reflected in section 15 introduce a welcome symmetry into an area of law previously distorted by "Byzantine peculiarities." New England Power Co. v. Asiatic Petroleum Corp., 456 F.2d 183, 189 (1st Cir.1972); see also Zosky v. Boyer, 856 F.2d 554, 560 (3d Cir.1988) (pre-section 15 case examining complicated history of appealability of orders relating to arbitration), cert. denied, --- U.S. ----, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989). The amendments do not alter the principles of appealability with respect to final orders. With respect to an interlocutory order issued in an ongoing proceeding, however, section 15 makes clear that any order favoring litigation over arbitration is immediately appealable and any order favoring arbitration over litigation is not.
 
 
 8
 Because this case does not involve a separate section 4 proceeding, the principles respecting final orders are not at issue here. The only relevant principles are those respecting interlocutory orders. Because the appeal provisions of section 15(a) are written in the disjunctive--listing a denial of a section 4 order separately from a final order--there should be no doubt that a section 4 order need not always emanate from a separate proceeding. See also Zosky, 856 F.2d at 556 (noting that section 4 motions to compel arbitrations are often filed in ongoing proceedings). It is likewise clear from the same provisions that an interlocutory order denying a section 4 motion to compel arbitration is immediately appealable.
 
 
 9
 Under this commonsense reading of the newly amended Federal Arbitration Act, we reject plaintiffs' argument that we lack jurisdiction to consider this appeal. We therefore turn to the merits of the district court's decision.[4]
 
 III.
 
 10
 At the time the district court ruled on the motion to compel arbitration, the enforceability of predispute arbitration agreements covering claims arising under the Securities Act of 1933 was in dispute. A brief history will explain. In the 1953 case of Wilko v. Swan, 346 U.S. at 438, 74 S.Ct. at 188, the Supreme Court invalidated predispute agreements to arbitrate Securities Act claims. Lower courts then extended that rule of nonarbitrability to claims arising under the Exchange Act of 1934 as well. Over the years, however, judicial distrust of arbitration as a means of resolving securities disputes began to dissipate, and the Supreme Court began to favor arbitration. See, e.g., Shearson/American Express, Inc. v. McMahon, 482 U.S. at 231-32, 107 S.Ct. at 2339-40 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Moses H. Cone Memorial Hospital v. Mercury Construction Corp, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Sherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). Most importantly, in Shearson/American Express, Inc. v. McMahon, 482 U.S. at 238, 107 S.Ct. at 2348, the Court reversed the general rule with respect to securities arbitration and held that agreements to arbitrate claims arising under the Exchange Act were enforceable. Because McMahon did not involve claims arising under the Securities Act, however, the Court did not expressly overrule its earlier decision in Wilko. But in rejecting as outmoded Wilko 's bias against arbitration, McMahon cast serious doubt on the continuing vitality of the Wilko rule that arbitration agreements covering Securities Act claims were unenforceable.
 
 
 11
 In ruling on Legg Mason's motion to compel arbitration, the district court expressed correctly its own belief that Wilko was no longer good law in light of McMahon, but decided that it was bound by this court's explicit post-McMahon dicta that "[a]s long as Wilko stands in the Supreme Court, agreements to arbitrate claims under the Securities Act of 1933 will remain unenforceable." Osterneck v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 841 F.2d 508, 512 (3d Cir.1988). The district court therefore held that, under the law as then existing, plaintiffs' claims arising under the Securities Act were nonarbitrable.
 
 
 12
 Happily, on review of this ruling we now have the benefit of the Supreme Court's explicit pronouncement on the arbitrability of Securities Act claims. After the district court issued its order and while appeal was pending in this court, the Supreme Court decided the case of Rodriguez De Quijas v. Shearson/American Express, Inc., --- U.S. ----, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), in which it expressly overruled Wilko and upheld a predispute agreement to arbitrate claims arising under the Securities Act of 1933. Therefore, the enforceability of predispute agreements to arbitrate Securities Act claims is no longer in doubt.
 
 
 13
 This is not to say, however, that we must necessarily reverse the district court's order. The court's refusal to compel arbitration of plaintiffs' Securities Act claims may be upheld if there is any ground that supports the court's ruling. Dravo Corp. v. Robert B. Kerris, Inc., 655 F.2d 503, 509-10 (3d Cir.1981) (citing Dandridge v. Williams, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970)). Plaintiffs argue that the arbitration agreement here, unlike that in Rodriguez de Quijas, explicitly excepted from arbitration claims arising under federal securities law. Because an arbitration agreement is a matter of contract, plaintiffs argue, Legg Mason should be bound to the terms of that agreement and should not be allowed to compel arbitration of Securities Act claims. We next examine the merits of that contention.
 
 IV.
 
 14
 An agreement to arbitrate is simply a contract, fashioned by the parties according to their intentions. Although the Federal Arbitration Act establishes a presumption in favor of arbitrability when arbitrability is in doubt, it does not prevent parties from agreeing to exclude matters from arbitration if they so desire. See Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ., --- U.S. ----, ----, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (Federal Arbitration Act "does not require parties to arbitrate when they have not agreed to do so ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement"). Plaintiffs argue that the specific agreement between them and Legg Mason explicitly excluded from compulsory arbitration claims arising under the federal securities laws. Therefore, they argue, notwithstanding the Supreme Court's decision in Rodriguez DeQuijas upholding arbitration of Securities Act claims, arbitration of plaintiffs' Securities Act claims was properly denied because those claims were outside the scope of their agreement.[5]
 
 
 15
 The plain language of the plaintiffs' arbitration agreement leaves no doubt as to the parties' intentions with respect to arbitration of Securities Act claims. As a qualification to the general agreement to arbitrate disputes, the arbitration clause provides:
 
 
 16
 However, I am aware that this arbitration provision is not binding upon me in any dispute or controversy that arises under the federal securities laws, and, in such cases, I may seek resolution through litigation in the courts.
 
 
 17
 This language unequivocally reserves to plaintiffs the right to litigate their federal securities claims in a judicial forum.
 
 
 18
 Legg Mason, however, urges this court to look beyond the plain language of the contract to the regulatory background surrounding the inclusion of that language in the arbitration agreement. It notes that in response to judicial invalidation of predispute agreements to arbitrate claims arising under the federal securities laws, the Securities and Exchange Commission promulgated Rule 15c2-2, which effectively required broker-dealer customer agreements to advise customers of their right to litigate such claims. Specifically, Rule 15c2-2, which was later rescinded in light of McMahon, provided:
 
 
 19
 (a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.
 
 
 20
 17 C.F.R. Sec. 240.15c-2(b) (1987). Legg Mason argues that the language at issue in plaintiffs' customer agreements did not reflect a bargained-for term of the contract but rather was included merely to comply with SEC rules.
 
 
 21
 Legg Mason cites decisional authority for the proposition that the exclusionary language does not create a substantive right to litigate federal securities claims in a judicial forum, but rather serves only as "notice that an agreement to arbitrate does not override existing federal laws limiting the scope of possible litigation." Finkle & Ross v. A.G. Becker Paribas, Inc., 622 F.Supp. 1505, 1510 (S.D.N.Y.1985); see also McCowan v. Dean Witter Reynolds, Inc., 682 F.Supp. 741, 743 (S.D.N.Y.1987). None of this authority, however, is binding on this court, and we reject it as unsound.
 
 
 22
 Instead, we conclude that the unequivocal exclusionary language in plaintiffs' arbitration agreements creates a contractual right to litigate plaintiffs' Securities Act claims. The language admits of no justification for looking beyond it to the regulatory history surrounding its inclusion. In any event, even if we were to look at the regulatory background we see no reason in it for rejecting customers' reasonable expectations. A customer reading the exclusionary language could not be expected to be aware of the regulatory background or to understand that the language may become meaningless with the winds of change in the law. Legg Mason, if it truly did not intend to be bound by the contractual language it drafted, should have challenged Rule 15c2-2 or reexecuted the arbitration agreements in accordance with its intent after rescission of the Rule. It cannot now win relief from the specific language of its own contract simply because it claims not to have meant what it said.[6]
 
 V.
 
 23
 After the district court appropriately issued its order refusing to compel arbitration of plaintiffs' claims arising under the Securities Act of 1933, the Supreme Court overruled its decision in Wilko and held that predispute agreements to arbitrate Securities Act claims are enforceable. This decision would compel reversal of the district court's order if not for the unambiguous language in the arbitration agreement excluding from its scope claims arising under the federal securities laws. Therefore, although Wilko no longer poses a bar to arbitration of Securities Act claims, basic principles of contract law bind Legg Mason to its agreement to exclude from arbitration claims arising under the Securities Act.
 
 
 24
 Accordingly, the order of the district court refusing to compel arbitration of the Securities Act claims will be affirmed.
 
 
 
 [1]
 Although the arbitration provisions in the contracts signed by the plaintiffs varied somewhat in language, they contained the identical sentence excepting from arbitration disputes arising under federal securities laws: "However, I am aware that this arbitration provision is not binding upon me in any dispute or controversy that arises under the federal securities laws, and, in such cases, I may seek resolution through litigation in the courts."
 
 
 [2]
 Section 15(a) provides, in pertinent part:
 (a) An appeal may be taken from--
 (1) an order--
 (A) refusing a stay of any action under section 3 of this title,
 (B) denying a petition under section 4 of this title to compel arbitration,
 * * *
 or
 (3) a final decision with respect to an arbitration that is subject to this title.
 9 U.S.C.A. Sec. 15(a) (West Supp.1989).
 
 
 [3]
 Section 15(b) provides, in relevant part:
 (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--
 (1) granting a stay of any action under section 3 of this title; [or]
 (2) directing arbitration to proceed under section 4 of this title....
 9 U.S.C.A. Sec. 15(b) (West Supp.1989).
 
 
 [4]
 Plaintiffs advance a second argument in opposition to our jurisdiction over this appeal. They contend that Legg Mason waived the right to appeal when it stipulated without reservation to a voluntary dismissal of this action in January 1989 with the right of any party to reinstate the action at any time. That dismissal, however, was merely ephemeral as plaintiffs themselves, pursuant to the terms of the stipulated dismissal, reactivated the case and the action proceeded to trial and judgment. Therefore, plaintiffs' contention that we lack jurisdiction to review the interlocutory order because of the dismissal of the case has no merit
 
 
 [5]
 We refer only to plaintiffs' claims under the Securities Act because those are the only claims relevant on appeal. The district court compelled arbitration of plaintiffs' Exchange Act claims, and the Federal Arbitration Act prohibits an immediate appeal of an interlocutory order compelling arbitration. Therefore, although our discussion with respect to the exclusionary language of the arbitration agreement would seem to apply equally to plaintiffs' Exchange Act claims, we are constrained on this appeal to rule only on the arbitrability of plaintiffs' Securities Act claims
 
 
 [6]
 Other courts have likewise rejected the argument that a broker is not bound by an exclusionary provision in a customer arbitration agreement because the language was mandated by the SEC. See Leicht v. Bateman Eichler, Hill Richards, Inc., 848 F.2d 130, 133 (9th Cir.1988) (rejecting argument that exclusionary language in arbitration agreement is merely notice provision and does not create substantive right to litigate); Church v. Gruntal & Co., Inc., 698 F.Supp. 465, 468-69 (S.D.N.Y.1988) (same); see also Giles v. Blunt, Ellis & Loewi, Inc., 845 F.2d 131, 134 (7th Cir.1988) (holding claims arising under Exchange Act nonarbitrable based on the specific language of the arbitration agreement excepting from compulsory arbitration "claims based solely on alleged violations of the federal securities laws")