**Carolyn G. TROTT and Elmer J. Trott**

v.

**Dominick PACIOLLA, Prudential–Bache Securities, Inc., Merrill Lynch, Inc.**

**Civ. A. No. 90–0815.**

United States District Court,
E.D. Pennsylvania.

Oct. 16, 1990.

---

Shanin Specter, Philadelphia, Pa., for plaintiffs.

Ann D. White, Philadelphia, Pa., for defendants Paciolla and Prudential–Bache.

Stephen C. Baker, Wayne, Pa., for defendant Merrill Lynch.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiff customers Elmer J. and Carolyn G. Trott have filed suit against their broker, defendant Dominick Paciolla, and his two successive employers, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and Prudential–Bache Securities, Inc. ("Prudential") alleging statutory violations of the Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b) (West

---

**1.** The court notes jurisdiction on grounds of both diversity under 28 U.S.C. § 1332 and federal question, 28 U.S.C. § 1331.

**2.** Defendants filed two motions: "Motion of Merrill Lynch, Pierce, Fenner & Smith, Inc. for an Order Staying Claims and Compelling Arbitration" and "Motion of Defendants Dominick Paciolla and Prudential–Bache Securities, Inc. for an Order Compelling Arbitration and Staying All Claims." Plaintiffs filed responses to each motion.

---

1981), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (West Supp.1990), the Pennsylvania Securities Act of 1972, Pa.Stat. Ann. tit. 70, § 1–401 (Purdon Supp.1990), and state common law claims of breach of contract, breach of fiduciary duty, conversion, fraud, and negligence.[1] Before the court are defendants' motions[2] for an order staying claims and compelling arbitration pursuant to the Federal Arbitration Act, 9 U.S.C.A. §§ 3, 4 (West 1970). For the following reasons, Merrill Lynch's motion is granted in its entirety and the motion of Paciolla and Prudential is granted in part and denied in part.

The Federal Arbitration Act empowers district courts to compel arbitration when one of the parties to a written arbitration agreement petitions the court alleging the failure, neglect, or refusal of the other party to arbitrate.[3] The Act further states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3 (West 1970).

As the Supreme Court has explained, "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts

---

**3.** A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C.A. § 4 (West 1970).

*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (emphasis in original).

■ On a motion to compel arbitration, the district court's inquiry is limited to ascertaining the existence of an agreement to arbitrate and the validity of the arbitration clause *per se. Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.,* 774 F.2d 524, 529 (1st Cir.1985). Similarly, "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only those issues relating to the making and performance of the agreement to arbitrate." *Prima Paint,* 388 U.S. at 404, 87 S.Ct. at 1806. The Supreme Court has further stated that "as a matter of federal law, any doubts concerning the *scope of arbitrable issues* should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (emphasis added).

■ The standards for evaluating motions to compel arbitration are like those of summary judgment. *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 n. 6 (3d Cir.1980). In construing and enforcing the arbitration clause in question, federal law applies even when jurisdiction is based on diversity. *Goodwin v. Elkins & Co.,* 730 F.2d 99, 108 (3d Cir.1984), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984).

■ In 1979, plaintiff customers opened a Cash Management Account ("CMA") at Merrill Lynch with Paciolla as their broker-dealer. Plaintiff customers maintained accounts at Merrill Lynch while Paciolla was employed there. When Paciolla began working for Prudential in 1986, plaintiff customers transferred their accounts to Prudential for Paciolla's management.

Plaintiff customers signed two agreements with Merrill Lynch, both of which contained arbitration clauses. On June 3, 1982, plaintiffs signed a two-page "Customer Agreement" (1982 Customer Agreement), paragraph eleven of which reads:

It is agreed that *any controversy between us arising out of your business* or this agreement *shall be submitted to arbitration* conducted under the provisions of the Constitution and rules of the board of Governors of the New York Stock Exchange, Inc. or pursuant to the code of arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect.

Complaint, Exh. B (emphasis added).

In 1984, plaintiff customers executed a "Standard Option Agreement" (1984 Standard Option Agreement), paragraph nine of which says: "Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration." Complaint, Exh. C.

Plaintiff customers assert that neither agreement applies to their Cash Management Account since no agreement was signed in 1979 expressly covering the account. This argument is flatly contradicted by the plain language of the 1982 Customer Agreement referring to "any controversy between us arising out of your business." These broad, sweeping terms clearly encompass claims relating to the Cash Management Account.

■ Plaintiff customers argue, however, that any claims arising from Paciolla's and Merrill Lynch's actions from 1979–1982 are not subject to arbitration because no agreement was in place until 1982. If this contention has any merit at all, it addresses the scope of the arbitration clause, and is therefore an issue for the arbitrators. *See Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–25, 103 S.Ct. at 941 (doubts concerning the scope of arbitrable issues resolved in favor of arbitration); *Dougherty v. Mieczkowski,* 661 F.Supp. 267, 276 (D.Del. 1987) (plaintiffs' argument that claims arose before they signed the Joint Account

Agreement goes to meaning and construction of arbitration clause and is therefore a question for the arbitrators); *cf. Rand Bond of North America v. Saul Stone & Co.*, 726 F.Supp. 684, 688 (N.D.Ill.1989) (arbitration agreement signed after dispute had matured bound parties to arbitrate as agreement spoke "in terms of relationships and not timing"); *Shotto v. Laub*, 632 F.Supp. 516, 522 (D.Md.1986) (whether the arbitration agreement was signed before or after plaintiffs' claims arose doesn't change the fact that they agreed to arbitrate).

■ Plaintiff customers further argue that the "arbitrability aspect" of the 1982 Customer Agreement and the 1984 Standard Option Agreement are contracts of adhesion. (Plaintiffs' Brief at 6). Since this argument goes to the validity of the arbitration clause, it is a question for the court. In the typical contract of adhesion, economic necessity compels a weaker party to accept an unfavorable contractual term, and "[t]he dominant party knows that the other would not accept the term, and thus employs the practices of minute print, unintelligible legalese, or high pressure sales technique." *Brokers Title Co. v. St. Paul Fire & Marine Ins. Co.*, 610 F.2d 1174, 1180 (3d Cir.1979). In the instant case, however, the 1982 Customer Agreement is only two pages long with reasonably large print size. Paragraph eleven, which contains the arbitration clause, is captioned in bold letters: "**Agreement to Arbitrate Controversies.**" *See* Complaint, Exh. B. The 1984 Standard Option Agreement is only one page, and though the print is smaller than that of the 1982 Customer Agreement, it is not minute. *See* Complaint, Exh. C. Most importantly, however, plaintiffs have cited no authority to support the notion that an arbitration clause is a contractual term that plaintiffs should have opposed or one that is inherently favorable to Merrill Lynch. On the contrary, such a proposition flies in the face of strong public policies favoring arbitration. *See Shotto v. Laub*, 632 F.Supp. at 522; *see generally*, *Shearson/American Express, Inc. v.*

*McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 2340–41, 96 L.Ed.2d 185 (1987) (mistrust of arbitration difficult to square with prevailing assessment of arbitration), *reh'g denied*, 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819. Merrill Lynch's arbitration agreements are not contracts of adhesion.

■ Plaintiffs' final argument in opposition to Merrill Lynch's motion to compel arbitration and to stay proceedings pending arbitration concerns the application of the arbitration clauses to the broker, Dominick Paciolla. Plaintiff customers contend their claims against Paciolla are not subject to arbitration since he was not a signatory to the arbitration agreements.[4] Plaintiffs are mistaken. Mr. Paciolla was an employee of Merrill Lynch. An entity such as Merrill Lynch can only act through its employees and an arbitration agreement would be of little practical value if it did not extend to employees. Courts have often held non-signatories to be bound by arbitration agreements. In *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 938–39 (3d Cir.1985), a dispute over ERISA benefits, the Third Circuit found Barrowclough's contingent beneficiaries, Kidder, Peabody's representatives and subentities all bound by the arbitration agreement even though they did not sign the agreement. In *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187–88 (9th Cir.1986), after reviewing cases involving non-signatories, the court of appeals held the broker-dealer bound by the arbitration agreement since the alleged wrongful conduct involved his mishandling of plaintiff investor's account. Here, as in *Letizia*, the broker-dealer's alleged wrongdoing pertains to the mismanagement of plaintiff customers' account. Plaintiffs' claims against Paciolla are arbitrable.

All of plaintiff customers' claims against Merrill Lynch and their claims against Paciolla while he was at Merrill Lynch are subject to arbitration, *Shearson/American Express*, 482 U.S. 220, 107 S.Ct. 2332 (Securities Exchange Act of 1934 and RICO claims arbitrable); *Dean Witter Reynolds Inc.*, 470 U.S. at 217, 105 S.Ct. at 1241

---

**4.** We note that defendant Paciolla has not objected to arbitration of his case.

(pendent state claims arbitrable), and must be stayed pending the outcome of the arbitration proceedings, 9 U.S.C.A. § 3.

 We now turn to the motion of defendants Paciolla and Prudential to compel arbitration and stay the proceedings. When plaintiff customers followed Paciolla to Prudential, they signed a "Joint Account Agreement" on February 3, 1986 (1986 Joint Account Agreement). This agreement also contains an arbitration clause. However, the language of Prudential's arbitration clause differs somewhat from those of Merrill Lynch. Prudential's 1986 Joint Account Agreement reads in relevant part:

> Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, ... *except for any controversy with a public customer for which a remedy may exist pursuant to an express or implied right of action under the federal securities laws,* ... shall be settled by arbitration.

Motion of Defendants Paciolla and Prudential, Exh. B (emphasis added).

Although the Supreme Court has held that claims under § 10(b) of the Securities Exchange Act of 1934 can now be subject to arbitration, *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Third Circuit has found that "unequivocal exclusionary language in plaintiffs' arbitration agreements creates a contractual right to litigate plaintiffs' Securities Act claims." *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 734 (3d Cir.1989). Although the words in the present case do not spell out the availability of a judicial forum as plainly as those in *Ballay,*[5] the exceptive language of Prudential's 1986 Joint Account Agreement clearly exempts such claims from mandatory arbitration. We find *Ballay* applicable to the instant case, and therefore plaintiff customers' claims

against Prudential under the Securities Exchange Act of 1934 are not arbitrable.

 With the exception of the federal securities law violations, we find plaintiff customers remaining RICO and state law claims subject to arbitration. *Shearson/American Express*, 482 U.S. 220, 107 S.Ct. 2332 (RICO claims arbitrable); *Dean Witter Reynolds Inc.*, 470 U.S. at 217, 105 S.Ct. at 1241 (pendent state claims arbitrable). Plaintiffs' argument that the arbitration clause in Prudential's 1986 Joint Account Agreement does not cover their claims against Paciolla is rejected for the same reasons as stated in reference to Merrill Lynch.

In accordance with the Federal Arbitration Act, 9 U.S.C.A. § 3, all arbitrable claims against Prudential and Paciolla are stayed pending arbitration. Furthermore, in exercising our discretion to control our docket, we feel that the non-arbitrable federal securities law actions should also be stayed pending the outcome of the arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 20 n. 23, 103 S.Ct. at 939 n. 23; *Dean Witter Reynolds*, 470 U.S. at 223, 105 S.Ct. at 1244 (protection of federal interests does not require manipulative ordering of bifurcated proceedings); *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d at 938.

---

5. The language at issue in *Ballay* was:
    However, I am aware that this arbitration provision is not binding upon me in any dispute or controversy that arises under the fed-

eral securities laws, and, in such cases, I may seek resolution through litigation in the courts.
*Ballay* at 734.