POLLAK, District Judge,
dissenting.
I agree with the court’s conclusion, in Part 111(A) of its opinion, that the case at bar is not one in which the alleged violation of the TILA “is apparent on the face of the disclosure statement” and hence could have been the basis for Ms. Ramadan’s suit “against [Hyundai Motor Finance (hereinafter “Hyundai”) as] assignee of[a] creditor.” 15 U.S.C. § 1641(a). But I disagree with the court’s conclusion, in Part III(B) of its opinion, that the language of the Holder Notice, which was contained in Ms. Ramadan’s automobile finance agreement and which advised Ms. Ramadan that “ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS ... WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER,” did not provide a basis for Ms. Ramadan’s suit against Hyundai.
As I understand the court’s opinion, its determination that the Holder Notice is nugatory is the product of the following syllogism: (1) The Holder Notice appeared in Ms. Ramadan’s finance agreement (and, one must suppose, hundreds of thousands of other finance agreements) not as a provision voluntarily acquiesced in by the seller and the assignee finance company, but in compliance with a regulation of the Federal Trade Commission making it “an unfair and deceptive trade act or practice ... for a seller, directly or indirectly, to ... [t]ake or receive a consumer credit contract which fails to contain the [Holder Notice] provision....” 16 C.F.R. § 433.2.(2) In determining the scope of civil liability for violations of the TILA, Congress has limited the liability of an assignee of a finance agreement to violations “apparent on the face of the disclosure statement, except where the assignment was involuntary.” 15 U.S.C. § 1641(a). (3) Since the Holder Notice’s inclusion in the Ramadan finance agreement was, in the coui-t’s view, coerced by the FTC; and since the Holder Notice, as prescribed by the FTC regulation, is in the court’s view, in “irreconcilable conflict” with the TILA; and since “regulations cannot trump statutory mandates,” the Holder Notice must give way.
The syllogism has, unquestionably, a straightforward simplicity which makes it quite compelling. The difficulty with the syllogism is that its focus is confined to the respective interests of Congress, the FTC, and Hyundai. Ms. Ramadan is, it appears, outside the terms of debate. But it is the Ramadans of the world to whom the Holder Notice is addressed. It is the Rainadans of the world who can be taken to have relied on what the Hyundais- of the world have, by accepting assignment of finance agreements, said to them. Granted that Congress has authority to negate the FTC directive that the Holder Notice be incorporated in every “consumer credit contract.” That appears to be what Congress meant to do when, in 1980, it amended TILA in a fashion that sub *204 stantially narrowed the assignee liability that the FTC had established by regulation several years before. But if, after 1980, a finance company continued to accept (or, if new to the financial marketplace, commenced accepting) finance agreements which contained the Holder Notice, why — as between the finance company and the purchaser-borrower— shouldn’t the finance company be held to the representation of holder liability contained in the finance agreement?
The court’s answer, so it would appear, is that the Holder Notice was never bargained for — that in its inception it was placed in finance agreements by virtue of FTC ukase. And presumably the court is also of the view that it is the enduring in terroremmss of the FTC’s authority that accounts for the continuing presence of the Holder Notice in finance agreements entered into (and sometimes litigated about) a decade, or even two decades, after Congress amended the TILA and, by hypothesis, exercised its authority to deflate the FTC regulation. I will not argue (although I think the argument could plausibly be made) that by now the Holder Notices that remain in place are there because finance companies, well aware that Congress in 1980 relieved them of any administratively mandated liability, have decided to accept liability as a contractual matter. To the contrary, I am prepared to accept, arguendo, that the Holder Notice remains an unbargained-for ingredient of the standard finance agreement. But it seems to me that a finance company, feeling that the Holder Notice is in place via force majeure and intending to defend against its applicability in any litigation that may arise, should, before accepting assignment of a finance agreement, insist that the Holder Notice be garlanded with caveat emptors that warn the purchaser-borrower of the finance company’s view that the 1980 TILA amendment robs the Holder Notice of substantive effect. A finance company has no ground for supposing that more than one in tens of thousands of purchaser-borrowers (the Ramadans of the world) will be conversant with the interplay between the FTC regulation and TILA. Given the disparity in the possession of crucial information, I would conclude that an assignee finance company that failed to insist on inclusion of an appropriate warning adjacent to the Holder Notice should be estopped from invoking the Holder Notice in litigation.
Requiring an assignee finance company that wishes to protect against TILA liability to add the type of warning described above would avoid the difficulty of frustrating a purchaser-borrower’s expectations. It would also avoid the consequences the court appears to be concerned about. Finance companies would no longer have grounds for feeling that they were being pushed by the FTC to give up rights guaranteed by Congress. Finance companies would have the choice to construct a contract that assigned TILA liability or to construct a contract that did not do so. Purchaser-borrowers’ reasonable expectations, and finance companies’ freedom to avoid assignee liability (as they are entitled to do under 15 U.S.C. § 1641(a)), would thus be preserved.
This approach is possible because the conflict between the statutory and regulatory provisions is not, as the court states, “irreconcilable.” As was recognized in Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 709 (11th Cir.1998), “[i]t is certainly true that parties can waive statutory protections and assume liabilities not required by law.” And while Hyundai is required by the FTC to include the Holder Notice as written, the FTC regulation does not prohibit additional language preserving the finance companies’ rights under 15 U.S.C. § 1641(a). Nor could the FTC prohibit the inclusion of such language, for the very reason that animates the court’s opinion: the FTC’s regulations cannot trump congressional statutes.
Such an approach would, so it seems to me, be in harmony with this court’s approach to the cognate problem presented *205 in Ballay v. Legg Mason Wood Walker, Inc., 878 F.2d 729 (3d Cir.1989). In today’s opinion the court says that, “[d]e-spite some similarities, there are stark differences between this case and Ballay.” I find the differences far less stark than the court does. And I find compelling the wisdom animating Judge Rosenn’s opinion for the Ballay court:
[W]e conclude that the unequivocal exclusionary language in plaintiffs’ arbitration agreements creates a contractual right to litigate plaintiffs’ Securities Act claims. The language admits of no justification for looking beyond it to the regulatory history surrounding its inclusion. In any event, even if we were to look at the regulatory background we see no reason in it for rejecting customers’ reasonable expectations. A customer reading the exclusionary language could not be expected to be aware of the regulatory background or to understand that the language may become meaningless with the winds of change in the law.
878 F.2d at 734.
For these reasons, I respectfully dissent.