Herbert B. WIEPKING; Lydia O. Wiepking, Plaintiffs–Appellants,

v.

PRUDENTIAL–BACHE SECURITIES, INC.; William B. Everhart, Defendants–Appellees.

No. 90–3326.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 27, 1990.

Decided Aug. 6, 1991.

Joseph J. Dehner (argued), Vincent E. Mauer, Frost & Jacobs, Cincinnati, Ohio, for plaintiffs-appellants.

Michael R. Schmidt (argued), Porter, Wright, Morris & Arthur, Cincinnati, Ohio, Thomas A. Holton, Dayton, Ohio, for defendants-appellees.

Before NORRIS, Circuit Judge, WELLFORD, Senior Circuit Judge,* and BALLANTINE, District Judge.**

ALAN E. NORRIS, Circuit Judge.

Plaintiffs challenge the district court's denial of their motion to vacate an arbitration award. The district court affirmed an earlier order compelling arbitration on the ground that the written agreement between plaintiffs and defendants required plaintiffs to pursue their federal securities claims in arbitration. The court so held despite language in the arbitration clause of the agreement that expressly exempted federal securities claims from arbitration. As an alternative ground for its holding, the court determined that plaintiffs waived their right to contest the arbitration award by submitting to arbitration. We reverse the district court on both grounds and remand for further proceedings consistent with this opinion.

## I.

Plaintiffs filed a complaint concerning the purchase and sale of securities through defendant Prudential–Bache Securities and the broker assigned to plaintiffs' account, defendant William B. Everhart. The complaint asserted several causes of action based upon the Securities Act of 1933, the Securities Exchange Act of 1934, and Ohio statutory and common law. Rather than answer the complaint, defendants filed a motion to compel arbitration, which the district court granted. The arbitration panel denied plaintiffs' claims. Plaintiffs' motion to vacate the arbitration award was denied by the district court.

This case confronts problems created by changes in federal law governing the enforceability of arbitration clauses in brokerage agreements. In 1953, the Supreme Court ruled that a predispute arbitration clause waiving a judicial forum for a public customer's claims under the Securities Act

of 1933 was invalid because it violated Section 14 of the Act. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In 1983, the Securities and Exchange Commission ("SEC") issued Rule 15c2–2, 17 C.F.R. § 240.15c2–2 (1984), in an effort to assure that the holding of *Wilko* was not ignored, and to remedy perceived shortcomings in the disclosure of customers' rights to a judicial forum. *See* 48 Fed.Reg. 53,404 (1983). The rule codified the SEC's longstanding view that it was a fraudulent act for a broker to enter into an agreement that purported to bind a public customer to arbitrate disputes arising under federal securities laws. After indicating that the language then being used by much of the broker-dealer community was unsatisfactorily ambiguous, the SEC approved specific disclosure language ("safe harbor" language) to be used for compliance with Rule 15c2–2. The language provided for an arbitration clause that excluded from the class of arbitrable disputes "any controversy with a public customer for which a remedy may exist pursuant to an express or implied right of action under the federal securities laws." *See Gugliotta v. Evans & Co.*, 690 F.Supp. 144, 145 (E.D.N.Y.1988).

The SEC enforced Rule 15c2–2 until 1987, the year the Supreme Court issued its decision in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The *McMahon* decision held that a public customer's claims under the Securities Exchange Act of 1934 were subject to predispute arbitration agreements. *Id.* Although this decision addressed claims under the Securities Exchange Act of 1934, whereas *Wilko* addressed claims under the Securities Act of 1933, the decision implicitly overruled *Wilko*.[1] In response, the SEC rescinded Rule 15c2–2 in October 1987. *See* 52 Fed.Reg. 39,216 (1987).

By May of 1985, both plaintiffs had entered into a Command Account Agreement

* The Honorable Harry W. Wellford assumed senior status on January 21, 1991.

** The Honorable Thomas A. Ballantine, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

1. The Supreme Court later expressly overruled *Wilko* in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

(the "Agreement") with defendant Prudential–Bache. The Agreement contained an arbitration clause which included the SEC-approved safe harbor language. Following the loss of several thousands of dollars in a risk arbitrage program, plaintiffs filed this action in February 1988, alleging violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and provisions of Ohio law.

## II.

The first issue raised by this appeal is whether the arbitration clause included in the Agreement required plaintiffs to arbitrate their federal securities law claims. The arbitration clause reads as follows:

> Any controversy arising out of or relating to my account ... except for any controversy with a public customer for which a remedy may exist pursuant to an express or implied right of action under the federal securities laws ... shall be settled by arbitration....

The district court held that, despite this facially unambiguous language, the clause must be interpreted to require arbitration of federal securities law claims. The court reasoned that "the exception language contained in the arbitration agreement was a federally mandated disclosure of the plaintiffs' rights rather than a part of the contract which had been bargained for by the plaintiffs." Since defendants included the language in order to comply with SEC regulations that were later overturned by Supreme Court decisions, the district court thought that it would be unfair to deny arbitration to brokers who had complied, while granting arbitration to those who might have failed to comply.

█ Review of a district court's decision to compel arbitration is *de novo*. *Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848 F.2d 130, 131 (9th Cir.1988). The starting point in arbitration disputes is to "determine whether the parties agreed to arbitrate [the] dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). An agreement to arbitrate is a contract and "[a]lthough the Federal Arbitration Act establishes a presumption in favor of arbitrability when arbitrability is in doubt, it does not prevent parties from agreeing to exclude matters from arbitration if they so desire." *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 733 (3d Cir.1989), *citing Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989).

█ Because the exception language in the Agreement clearly and unambiguously gives plaintiffs the right to litigate their federal securities law claims in the courts, the district court was not warranted in looking beyond the Agreement to regulatory history which may have led to its inclusion. The Supreme Court has noted that

> [w]hile Congress was no doubt aware that the [Federal Arbitration] Act would encourage the expeditious resolution of disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." ... Accordingly, we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.... It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

*Volt Information Sciences*, 489 U.S. at 478, 109 S.Ct. at 1255 (citations omitted). Because plaintiffs did not agree to arbitrate their controversy, the district judge erred by forcing them to arbitration.

█ The rescission of Rule 15c2–2 does not automatically amend plaintiffs' Agreement. A majority of the circuits considering this issue have held that express exemptions in arbitration clauses for federal securities law claims must be read to allow plaintiffs to litigate these claims in the courts. *See, e.g., Ballay*, 878 F.2d 729; *Giles v. Blunt, Ellis & Loewi, Inc.*, 845 F.2d 131 (7th Cir.1988); *Leicht*, 848 F.2d 130; *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754 (9th Cir.1989); *Coffey*

*v. Dean Witter Reynolds, Inc.*, 891 F.2d 261 (10th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 43, 112 L.Ed.2d 20 (1990). For instance, the *Ballay* court wrote:

> The plain language of the plaintiffs' arbitration agreement leaves no doubt as to the parties' intentions with respect to arbitration of Securities Act claims.... This language unequivocally reserves to plaintiffs the right to litigate their federal securities claims in a judicial forum.
>
> Legg Mason [the defendant], however, urges this court to look beyond the plain language of the contract to the regulatory background surrounding the inclusion of that language in the arbitration agreement.... Legg Mason argues that the language at issue in plaintiffs' customer agreements did not reflect a bargained-for term of the contract but rather was included merely to comply with SEC rules.
>
> . . . .
>
> Instead, we conclude that the unequivocal exclusionary language in plaintiffs' arbitration agreements creates a contractual right to litigate plaintiffs' Securities Act claims. The language admits of no justification for looking beyond it to the regulatory history surrounding its inclusion.... Legg Mason, if it truly did not intend to be bound by the contractual language it drafted, should have challenged rule 15c2–2 or reexecuted the arbitration agreements in accordance with its intent after rescission of the Rule. It cannot now win relief from the specific language of its own contract simply because it claims not to have meant what it said.

*Ballay,* 878 F.2d at 733–34. We concur with this reasoning and join those circuits that have held that express exemptions in arbitration clauses for federal securities law claims must be read to allow plaintiffs to litigate these claims in the courts.

### III.

■ As an alternative ground for denying plaintiffs' motion to vacate the arbitration award, the district court held that plaintiffs waived their right to contest the issue because they submitted their disputes to arbitration rather than immediately contesting the court's order to arbitrate. The district court concluded that there were available to plaintiffs a variety of methods by which they could have sought an immediate appeal.

Plaintiffs, however, argue that they never waived their right to litigate their controversy in the courts, noting their vigorous opposition to referral of their claims to arbitration, and their submission to arbitration only upon order of the court. Furthermore, plaintiffs argue that their conduct was entirely consistent with their intention ultimately to appeal the order compelling arbitration and that submission of their claims to arbitration when compelled to do so by court order should not prevent later review of the decision.

We agree. Plaintiffs did not waive their right to appeal the district court's order simply because they did what the court ordered them to do. This is not a situation where plaintiffs consented to arbitration and are now seeking a second bite at the apple. And, contrary to defendants' contention, the court's order of reference was not a final and appealable order. The Supreme Court's decision in *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), rendered nonappealable orders compelling arbitration until after the conclusion of arbitration. *See also De Fuertes v. Drexel, Burnham, Lambert, Inc.,* 855 F.2d 10 (1st Cir.1988); *Zosky v. Boyer,* 856 F.2d 554 (3d Cir.1988), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989); *Abernathy v. Southern California Edison,* 885 F.2d 525 (9th Cir.1989); *Coffey,* 891 F.2d 261. Furthermore, the order is not appealable as an injunction or as a "collateral order" because plaintiffs suffered no irreparable harm from delayed appellate review. "At worst, the parties will have been subjected to the expense of obtaining an arbitration award that ultimately proves to be unenforceable as wrongly ordered; although this would be unfortunate, the prospect is not so grim as to justify departing from the general rule disfavoring piecemeal appeals." *Zosky,* 856 F.2d at 561.

Defendants contend that, even if the court's order was not an interlocutory order appealable under 28 U.S.C. § 1292(a) (1982), plaintiffs were required to seek discretionary review under 28 U.S.C. § 1292(b) (1982), and that, by not doing so, they waived their right to contest the order. Plaintiffs were under no such duty. One hesitates to contemplate the avalanche of motions for discretionary review that would burden the courts if parties were required to seek this relief from clearly interlocutory orders or forfeit their right to appeal the matter when the litigation is concluded.

## IV.

We agree with defendants' contention that plaintiffs' state law claims were subject to arbitration under the language of the arbitration clause.

## V.

The district court's order is reversed, and this cause is remanded for further proceedings consistent with this opinion.