RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ALTICOR, INC.,

        *Plaintiff/Counter
defendant-Appellee,*

     *v.*

NATIONAL UNION FIRE INSURANCE CO. OF
PITTSBURGH, PA, a member of the American
International Group, Inc.,

        *Defendant/Counter
plaintiff-Appellant.*

No. 04-1080

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 03-00350—Richard A. Enslen, District Judge.

Argued: March 9, 2005

Decided and Filed: June 9, 2005

Before: MARTIN, GILMAN, and FRIEDMAN, Circuit Judges.[*]

---

**COUNSEL**

**ARGUED:** John P. Jacobs, JOHN P. JACOBS, P.C., Detroit, Michigan, for Appellant. James D. Wilson, McVEY & PARSKY, Detroit, Michigan, for Appellee. **ON BRIEF:** John P. Jacobs, Norton T. Gappy, JOHN P. JACOBS, P.C., Detroit, Michigan, for Appellant. James D. Wilson, McVEY & PARSKY, Detroit, Michigan, for Appellee.

     FRIEDMAN, J., delivered the opinion of the court, in which MARTIN, J., joined. GILMAN, J. (pp. 6-7), delivered a separate dissenting opinion.

---

[*] The Honorable Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

––––––––––––––––––

**OPINION**

––––––––––––––––––

FRIEDMAN, Senior Circuit Judge.  An insurance company and its insured dispute the meaning and scope of a term in the company's insurance policy.  The insured filed suit in the district court for a declaratory judgment that the policy means what the insured contends.  In response, the insurance company moved to compel arbitration, pursuant to an arbitration provision contained not in the insurance policy, but in an ancillary agreement between the parties governing the insured's obligations and responsibilities in making various payments to the insurance company.  The district court denied the motion, ruling that the arbitration provision does not cover the particular dispute.  *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:03-CV-350 (W.D. Mich. Dec. 10, 2003) (order).  We affirm.

I

A.  The basic facts are undisputed.  For some years the appellant, National Union Fire Insurance Co. of Pittsburgh, PA ("National Union"), has issued general liability insurance policies to the appellee Alticor, Inc. ("Alticor").  The policy limits National Union's liability for "each occurrence" to $2 million.  The policy also contains a "deductible " of $2 million "per occurrence" and states that National Union's "obligation . . . to pay damages . . . applies only to the amount of damages in excess of any deductible amounts . . . and the limits of insurance applicable to 'each occurrence' for such coverages will be reduced by the amount of such deductible."

Under this insurance policy, National Union appears to have no liability, because its $2 million liability limit has a $2 million deductible and its liability is thus reduced to zero by the deductible.  At oral argument, however, Alticor explained that the function of the policy is to provide insurance coverage for its legal expenses incurred in defending litigation.  The insurance policy itself does not contain any arbitration provisions.

In addition to the insurance policy itself, National Union and Alticor also entered into a separate "Premium Payment Agreement" that dealt in detail with various aspects of payments by each party.  Under this Agreement, Alticor agrees "to pay [National Union] the deductible portions of all losses that [National Union] pay[s] on [Alticor's] behalf under such Policies as are subject to deductible or loss reimbursement terms[.]"   The Premium Payment Agreement includes an arbitration provision stating: "All unresolved disputes or differences arising out of or relating to this Agreement will be submitted to" arbitration.  The Premium Payment Agreement also details the mechanics of the arbitration process, and refers to the arbitration provision in a section stating that "[i]f you [Alticor] disagree with us [National Union] about any amount that we have asked you to pay, within the time allowed for payment you will 1.  give us written particulars about the items you disagree with; and 2.  pay those items you do not disagree with. . . .  We [National Union] may deem disputed items not resolved by agreement within 60 days after our response to your written particulars to be in default unless Arbitration has been commenced in accordance with [the arbitration provision]."

B.  The present case stems from three suits filed against Alticor (under its former name, "Amway Corporation") in Texas state courts.  Under the insurance policy, National Union was responsible for paying Alticor's defense costs in these cases.  A dispute arose between National Union and Alticor over the amount of Alticor's deductible, which is $2 million "per occurrence."  Alticor contended that because the three Texas suits arose out of "the same set of facts and circumstances," they constituted a single "occurrence" and therefore Alticor's maximum deductible

was only $2 million. National Union contended that each suit constituted a separate "occurrence" and that Alticor therefore had a total deductible of $6 million.

Alticor filed a diversity suit against National Union in the United States District Court for the Western District of Michigan, seeking a declaratory judgment that "the claims set forth [in the Texas state court actions] constitute one occurrence, offense, or common cause under the terms of the policies and applicable law." In response, National Union moved pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, to stay the proceedings and compel arbitration under the arbitration clause in the Premium Payment Agreement.

The district court, adopting the report and recommendation of the magistrate judge, denied National Union's motion. It ruled that the arbitration clause in the Premium Payment Agreement did not cover the dispute over whether the three Texas state suits constituted a single occurrence under the insurance policy. That order is appealable under 9 U.S.C. § 16(a)(1)(A).

II

The arbitration provision of the Premium Payment Agreement states, in pertinent part:

All unresolved disputes or differences arising out of or relating to this Agreement will be submitted to the decision of three Arbitrators.

"[T]his Agreement" is the Premium Payment Agreement. The issue, therefore, is whether the dispute over the meaning of "occurrence" in the insurance policy "aris[es] out of or relat[es] to" the Premium Payment Agreement. We agree with the district court that it does not.

It is the insurance policy, not the Premium Payment Agreement, that defines the parties' substantive rights and duties under the policy. It is the policy that creates and defines Alticor's liability for the deductible of a specific amount "per occurrence." Indeed, the policy, but not the Premium Payment Agreement, contains various detailed "definitions" sections for different endorsements. The policy definition of "occurrence" states: "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Although this and other extensive definition sections of the policy appear to shed little, if any, light on the substantive dispute here involved, they do indicate that the dispute "aris[es] out of or relat[es] to" the policy itself, and not the Premium Payment Agreement. The latter agreement deals with the mechanics and formalities of premium payment, not the substantive rights of the parties under the insurance policy.

National Union contends, however, that the dispute here "aris[es] out of," and certainly "relat[es] to," the Premium Payment Agreement because of the provision in that Agreement by which Alticor "agree[d] . . . to pay [National Union] the deductible portions of all losses that we pay on your behalf under such Policies as are subject to deductible or loss reimbursement terms[.]" According to National Union, this provision requires Alticor to reimburse National Union up to a total of $6 million for the amounts that National Union pays in defending the three Texas suits, based on National Union's position that each suit is a separate "occurrence" under the deductability provision of the insurance policy. National Union contends that Alticor, by refusing to repay amounts in excess of $2 million, thereby violated its contractual obligations under the Premium Payment Agreement, and that the Agreement therefore covers the dispute between the parties and makes it arbitrable.

Alticor's obligation to repay National Union for disbursements made on Alticor's behalf, however, covers only the deductible amounts set forth in the insurance policy. Alticor does not question its general obligation to reimburse National Union for the "deductible portions" of the

money National Union has paid for Alticor. The question in the declaratory judgment suit is what constitutes the "deductible portions," and the answer depends upon the meaning of the term "occurrence" in the policy. Alticor's requirement under the Premium Payment Agreement to make payments to National Union does not convert the determination of the amount of such reimbursement—an issue arising under the insurance policy—into a dispute relating to or arising under the Premium Payment Agreement. The provision on which National Union relies specifies the procedure that Alticor is to follow in reimbursing National Union, but does not determine the scope of Alticor's reimbursement obligations. The insurance policy determines that issue.

National Union's position is not supported by the provision in the Premium Payment Agreement that National Union may treat any disputed amount not resolved by agreement after a certain time as in default "unless Arbitration has been commenced in accordance with" the arbitration clause of the Premium Payment Agreement. Although that provision recognizes that some issues relating to financial disputes between Alticor and National Union may be settled through arbitration, it does not establish that the dispute over whether the Texas lawsuits constitute one or three "occurrences" under the policy arises under or relates to the Premium Payment Agreement. Furthermore, this reference to arbitration is contained, not in the insurance policy itself, but in the separate Premium Payment Agreement.

If National Union had intended to subject this dispute to the arbitration provision, it could easily, clearly and unequivocally have done so, either by including an arbitration provision in the insurance policy itself, or by adding to the above arbitration provision, after the words "arising out of or relating to this Agreement," words such as "or involving the meaning or application of any provision of the insurance policy." Instead, National Union limited the arbitration provision to disputes arising out of or relating to the Premium Payment Agreement. Although this arbitration provision may appear broad because of its coverage of "all" disputes "relating to" the Premium Payment Agreement, it also is narrow because of its limitation to that Agreement and its failure even to refer to the insurance policy.

We are, of course, aware that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, incorporates "a liberal federal policy favoring arbitration agreements . . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). This general principle does not carry the day for National Union, however, because of the no less compelling principle that "[the Federal Arbitration Act] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989); *accord Roney & Co. v. Kassab*, 981 F.2d 894, 897 (6th Cir. 1992); *Wiepking v. Prudential-Bache Sec., Inc.*, 940 F.2d 996, 998 (6th Cir. 1991). In determining the arbitrability of a dispute, courts do not "reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also Glazer v. Lehman Bros. Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). Here, as we have shown, the arbitration provision is limited to "disputes or differences arising out of or relating to" the Premium Payment Agreement, and the dispute between the parties relates not to that agreement, but to the insurance policy.

We also note that in a footnote in *Mitsubishi*, the Supreme Court stated that "the exclusion of some areas of possible dispute from the scope of an arbitration clause does not serve to restrict the reach of an otherwise broad clause in the areas in which it was intended to operate. Thus, insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles,

the Court of Appeals properly resolved any doubts in favor of arbitrability." 473 U.S. at 624 n.13. The issue the *Mitsubishi* Court addressed was whether the arbitration clause "should be read narrowly to exclude the statutory claims," *id.*, which were part of the respondent's counterclaim and included claims under the antitrust laws. *Id.* at 619-20. The "enumerated articles" were provisions of a distribution agreement to which the arbitration provision specifically referred. *Id.* at 617. National Union, in its brief, apparently treats the Court's statement as announcing the standard that a controversy is arbitrable if it "touch[es] matters covered by" the arbitration clause. National Union reads this passing comment out of context, and we do not believe the words have the broad impact National Union would give them.

In affirming the district court's refusal to order arbitration, however, we do not adopt that court's theory that one ground for that result is what it described as New York law's "restrictive interpretation of arbitration clauses," "which is binding under the premium payment agreement." The latter agreement provides that it would be "governed by and construed in accordance with" New York law. In his report and recommendation, which the district court adopted, the magistrate judge quoted the statement in an intermediate New York appellate court opinion that arbitration can not be compelled "unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute," and that the party seeking arbitration must demonstrate "a 'clear and unequivocal' agreement to arbitrate the particular claim at issue."

As demonstrated above, however, our affirmance of the district court rests solely on our interpretation of the arbitration clause in the premium payment agreement. Our analysis of the clause at issue here comports with the requirements of the Federal Arbitration Act, and does not depend on any principles of New York arbitration law. *Cf. Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 933-37 (6th Cir. 1998).

## CONCLUSION

The judgment of the district court denying the motion to compel arbitration is affirmed.

---

**DISSENT**

---

RONALD LEE GILMAN, Circuit Judge. The majority concludes that the dispute over the meaning of the term "occurrence" in the Alticor insurance policies does not "arise out of" or "relate to" the Premium Payment Agreement, and is therefore not arbitrable. I respectfully disagree.

The Premium Payment Agreement essentially provides that (1) Alticor must pay National Union the deductible portion of all losses paid by National Union on Alticor's behalf under the applicable liability policies; (2) if Alticor disagrees with any amount that National Union has asked it to pay, Alticor must follow certain dispute procedures, including the commencement of arbitration if the dispute cannot be resolved by agreement, and (3) all unresolved disputes "arising out of or relating to" the Premium Payment Agreement must be submitted to three arbitrators for resolution.

Alticor's declaratory-judgment action seeks to limit the amount that it owes National Union. This action not only "touch[es] matters" covered by the Premium Payment Agreement, but it falls squarely within the range of disputes contemplated by the arbitration clause. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625 n.13 (1985) ("[I]nsofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability."); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (holding that the allegations need only touch matters covered by the contract containing the arbitration clause to require arbitration); *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (same). Despite its misleading name, the Premium Payment Agreement under consideration here controls the payment of policy deductibles as well as premiums. This case thus involves a dispute regarding the payment of the very policy deductibles referenced in the Agreement.

In finding that Alticor's declaratory-judgment action did not arise out of or relate to the Premium Payment Agreement, the majority emphasizes that "Alticor does not question its general obligation to reimburse National Union for the 'deductible portions' of the money National Union has paid Alticor." (Maj. Op. at 3-4) Instead, according to the majority, "[t]he question in the declaratory judgment suit is what constitutes the 'deductible portions,' and the answer depends upon the meaning of the term 'occurrence in the policy.'" (Maj. Op. at 4)

The majority purports to draw a distinction between the "procedure that Alticor is to follow in reimbursing National Union" and "the scope of Alticor's reimbursement obligations." (Maj. Op. at 4) In doing so, the majority appears to be engaging in "doublespeak." The scope of Alticor's reimbursement obligations, after all, is a function of the means by which the deductible amount is determined. By challenging the method by which National Union has calculated the deductible, Alticor has accordingly challenged the scope of the deductible as well.

Moreover, the majority's reliance on such a hairsplitting distinction is inconsistent with the Supreme Court's mandate that doubts concerning the scope of arbitration must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). I believe that the purported distinction is also inconsistent with this court's pronouncement that "there is a general presumption of arbitrability . . . 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) (quoting *AT&T Techs., Inc. v. Communications Workers of Am.* 475 U.S. 643, 650 (1986)).

Here, there is no "positive assurance" that the Premium Payment Agreement excludes this type of dispute from arbitration. The fact that National Union did not expressly incorporate the Premium Payment Agreement into the insurance policies or include an arbitration clause in the policies themselves does not, contrary to the suggestion of the majority, indicate otherwise. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960) ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, . . . the arbitration clause [is] quite broad."). No such "forceful evidence" exists in the case before us.

This dispute between the parties, in my opinion, is explicitly covered by the arbitration provision of the Premium Payment Agreement. But even if I had doubts regarding whether the Agreement applies to this dispute, those doubts should be resolved in favor of arbitration. Accordingly, I would reverse the judgment of the district court and remand the case with instructions to refer Alticor's claim to arbitration.