RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

POLYONE CORPORATION,

> *Plaintiff-Appellant*,

*v.*

WESTLAKE VINYLS, INC.,

> *Defendant-Appellee*.

No. 19-5137

---

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 5:18-cv-00107—Thomas B. Russell, District Judge.

Argued:  August 1, 2019

Decided and Filed:  September 6, 2019

Before:  GUY, THAPAR, and NALBANDIAN, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Josephine Mason Petrick, HANSON BRIDGETT LLP, San Francisco, California, for Appellant.  David A. Super, BRACEWELL LLP, Washington, D.C., for Appellee. **ON BRIEF:**  Josephine K. Mason, Gary A. Watt, Davina Pujari, Lawrence M. Cirelli, Samir J. Abdelnour, HANSON BRIDGETT LLP, San Francisco, California, Brent R. Baughman, Mark S. Riddle, BINGHAM GREENEBAUM DOLL LLP, Louisville, Kentucky, for Appellant. David A. Super, BRACEWELL LLP, Washington, D.C., Samuel D. Hinkle IV, Adam T. Goebel, Angela S. Fetcher, STOLL KEENON OGDEN PLLC, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

NALBANDIAN, Circuit Judge.   PolyOne Corporation and Westlake Vinyls have long disputed their share of the cleanup costs at a Superfund site in Kentucky.  So the parties entered a settlement agreement ("Agreement") in 2007.  Though that Agreement did not end the conflict, it provides some structure to the parties' recurring disputes about the cleanup costs.  Under the Agreement, PolyOne must reimburse Westlake for 100% of "allocable costs," and every five years, either party may demand arbitration to modify the amount or allocation of costs.

This appeal concerns an unusual provision in the Agreement.  Under § 6.3, the judicial-relief provision, either party may file a complaint in federal court for a "de novo judicial determination" of which costs are allocable, *after* the arbitration panel has issued an award allocating costs.  The arbitration award becomes null-and-void upon the filing of a complaint, and the Agreement prohibits either party from even admitting the arbitration award into evidence.  As far as the federal court is concerned, it is as though the arbitration never happened.

PolyOne has requested a declaration that the judicial-relief provision is invalid under the Federal Arbitration Act ("FAA") and that the Agreement's other arbitration provisions are unenforceable, along with an injunction to enjoin the most recent arbitration proceeding that began in 2017.  On the merits, PolyOne has a strong case.  But PolyOne's prior conduct does not align with its present position.  Twice, PolyOne demanded arbitration to determine which costs are allocable.  Indeed, PolyOne seeks to enjoin the very arbitration it demanded in 2017.

We withhold judgment on whether PolyOne has waived its ability to challenge the Agreement's arbitration provisions for all time.  But by demanding the 2017 arbitration that led to this litigation, PolyOne has waived its ability to obtain declaratory and injunctive relief—at least for that arbitration.  We AFFIRM the district court's dismissal of PolyOne's complaint.

I.

This dispute is about a clause in an agreement, but the origin of that dispute is less abstract. Goodrich Corporation operated three chemical-manufacturing plants at an industrial site in Calvert City, Kentucky. In 1988, the Environmental Protection Agency designated that site a "Superfund Site" subject to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 918, 927 (W.D. Ky. 2007). After that designation, Goodrich sold the plants to Westlake in two separate transactions—one in 1990, the other in 1997. Goodrich and Westlake executed asset transfer agreements requiring that (1) Goodrich indemnify Westlake for environmental costs attributable to Goodrich at the Calvert City plants; and (2) Westlake indemnify Goodrich for environmental costs attributable to Westlake at those same plants. After a corporate spinoff in 1993, PolyOne assumed Goodrich's rights and responsibilities under the two agreements, so PolyOne is responsible for liabilities attributable to Goodrich, and PolyOne can claim indemnification for liabilities attributable to Westlake.

*The Settlement Agreement*. For four years, PolyOne and Westlake litigated their respective shares of the cleanup costs at the Calvert City site before executing the Agreement in 2007. Under the Agreement, PolyOne agreed to pay 100% of future "allocable costs" related to the environmental remediation at the three plants. But the parties seem to have expected that they would dispute which costs are allocable. Indeed, the Agreement contains a provision allowing either party to demand arbitration to determine which costs are allocable:

> Either Westlake or PolyOne can request the other Party to modify the initial allocation of Allocable Costs set forth in Section 3.1 or subsequent allocations made under Section 4 by submitting to the other Party a notice of arbitration as provided for in Exhibit C to this Agreement.

(Agreement at § 4.1.) The parties may demand arbitration only once every five years. (*Id.*)

But the arbitration panel does not necessarily have the last word. Under § 6.3 of the Agreement, either party may file a complaint in federal court, within 90 days after the panel issues an award, seeking a "de novo judicial determination of (1) the amount of the Allocable Costs, and/or (2) the appropriate dollar division of the Allocable Costs between the Parties."

(*Id.* at § 6.3.) Filing a complaint is a unilateral act: under the Agreement, the non-filing party "shall not dispute a Party's right to bring a claim for judicial relief." (*Id.* at § 6.3(c).) Importantly, if a party files a complaint under § 6.3, the arbitration award is rendered "null and void." (*Id.* at § 6.1.) And the award cannot be used as evidence in the judicial proceeding. (*Id.* at § 10.3.)

Finally, the Agreement contains a severability provision:

In the event that any provision of this Agreement shall be finally determined to be unenforceable, such provision shall, so long as the economic and legal substance of the transactions contemplated hereby is not affected in any materially adverse manner as to any Party, be deemed severed from this Agreement and every other provision of this Agreement shall remain in full force and effect.

(*Id.* at § 14.)

*The 2017 Litigation.* Since the parties ratified the Agreement, PolyOne has initiated two arbitrations—first in 2010 and again in 2017. And the latter arbitration (the subject of this appeal) has generated two separate lawsuits.

After PolyOne demanded arbitration in 2017, Westlake filed a cross-notice of arbitration and submitted its own costs for arbitration. PolyOne responded by suing Westlake in federal court, requesting a declaratory judgment that the Agreement's arbitration provisions did not cover Westlake's claims. The district court, however, held that Westlake's claims were arbitrable and granted Westlake's motion to dismiss, which it construed as a motion to compel arbitration under the FAA. The district court, we should note, did not issue a stay of the proceedings in federal court but rather dismissed the entire complaint.

*The Current Litigation.* Two months after the district court dismissed PolyOne's complaint, PolyOne sued again in federal court, leading to this appeal. In its complaint, PolyOne contends that the Agreement's judicial-relief provision is invalid—but that severing that provision alone would materially alter the Agreement. So PolyOne requests a declaration that all

of the Agreement's arbitration provisions are unenforceable. PolyOne has also requested an injunction to halt the arbitration proceedings that began in 2017.[1]

Westlake opposed PolyOne's motion for injunctive relief and later moved to dismiss PolyOne's complaint. In its first order, the district court denied PolyOne's motion for injunctive relief, holding that PolyOne waived its right to challenge the Agreement's arbitration provisions when it filed a demand for arbitration in 2017. And in its second order, the district court granted Westlake's motion to dismiss PolyOne's complaint, again because of PolyOne's prior conduct. PolyOne appeals both decisions.

## II.

## A.

We turn first to the district court's dismissal of PolyOne's complaint and review that decision de novo. *See, e.g., Olagues v. Timken*, 908 F.3d 200, 202 (6th Cir. 2018). As part of its complaint, PolyOne seeks a declaration that we can distill to these components: (1) the Agreement's judicial-relief provision is invalid; (2) that provision cannot be severed from the Agreement's remaining arbitration provisions; and (3) therefore, all of the Agreement's arbitration provisions are unenforceable.

The first part of PolyOne's argument rests on the Supreme Court's decision in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008). In *Hall Street*, the Court held that the FAA provides the exclusive grounds for when a court may vacate, modify, or correct an arbitration award. *Id.* at 584. Under the FAA, a party may seek a judicial decree to confirm an arbitration award, and the court "must" confirm that award, unless the court vacates, modifies, or corrects the award. 9 U.S.C. § 9. That raises the following question: when may a court vacate, modify, or correct an arbitration award under the FAA? The petitioner argued that parties may contract to expand the scope of judicial review—by, for example, instructing the court to review the arbitrator's legal conclusions. *Hall Street*, 552 U.S. at 585. But the Court explained that the *only*

---

[1]When PolyOne filed its complaint, the arbitration had not begun, although a seven-week hearing was scheduled for August 2018. The arbitration panel issued a final award on May 22, 2019, while this appeal was pending.

grounds for vacating, modifying, or correcting an arbitration award under the FAA are those that the FAA expressly lists. *Id.* at 590. And that list is narrow. The grounds for vacating an arbitration award are:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Likewise, the FAA limits the grounds for modifying or correcting an arbitration award to these circumstances:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. But the FAA does not provide for judicial review of an arbitrator's legal conclusions, and that omission trumps whatever two parties may have agreed to by contract.

*Hall Street* left unanswered, however, whether the entire arbitration agreement is unenforceable if the agreement contains an invalid provision expanding the scope of judicial review. That brings us to the remainder of PolyOne's argument, which relies on a different decision—this time, from the Tenth Circuit. In *Citizen Potawatomi Nation v. Oklahoma*, the Tenth Circuit confronted a contract with several arbitration provisions, including one allowing either party to request de novo judicial review of the arbitration award. 881 F.3d 1226, 1228 (10th Cir. 2018). That court held that *Hall Street* rendered the judicial-review provision invalid.

*Id.* And although the contract in *Potawatomi* contained a severability provision, the court concluded that it could not sever the judicial-review provision without materially altering the parties' agreement to arbitrate. *Id.* at 1240–41. Accordingly, the court concluded that the parties' broader obligation to engage in arbitration was unenforceable and vacated the arbitration award that led to the litigation. *Id.* at 1241. Citing *Potawatomi*, PolyOne asks this court to declare all of the Agreement's arbitration provisions unenforceable as well.

PolyOne has a strong argument that the judicial-relief provision violates *Hall Street* by expanding the grounds for vacating an arbitration award. In practice, the Agreement allows either party to vacate an arbitration award it does not like, simply by filing a complaint in federal court. But Westlake argues that PolyOne has waived its challenge to the arbitration provisions, meaning that we cannot reach the merits of PolyOne's argument. As Westlake sees things, PolyOne could have challenged the Agreement's judicial-relief provision as soon as the Supreme Court issued *Hall Street*. But rather than request a declaratory judgment in 2008, PolyOne filed multiple arbitration demands. Westlake contends that by doing so, PolyOne has waived its ability to challenge the arbitration provisions.

A waiver is "the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks and citation omitted). We have not held whether a party waives its ability to challenge an arbitration agreement when it demands arbitration, but other courts have said as much. *See, e.g.*, *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980). In *Nghiem*, the Ninth Circuit held that the plaintiff waived his challenge to the validity of an arbitration agreement with his employer because the plaintiff—not the employer—was the party that demanded the arbitration. *Nghiem*, 25 F.3d at 1439. Although the plaintiff's employment contract said nothing about arbitration, the plaintiff later signed some forms acknowledging that he read the company's policies, including one requiring mandatory arbitration of employee complaints. *Id.* After the employer terminated him, the plaintiff demanded arbitration against the employer and lost. So the plaintiff sued the employer in federal court, alleging that because he never signed a written agreement to arbitrate all claims against his

employer, the arbitration decision was not binding.**2** Setting aside whether the agreement was deficient, the court explained that the plaintiff's "voluntary initiation of arbitration can be interpreted as waiver of any objection he may have had over the authority of the arbitrator." *Id.* at 1440. The Fifth Circuit reached a similar conclusion, explaining:

> Whether in technical legal terms the surrender of the possible argument that a certain dispute is not covered by the promise to arbitrate should be considered a waiver is not of present moment. On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute.

*Piggly Wiggly*, 611 F.2d at 584. And still more courts have found waiver where a party consents to the arbitration and only later challenges the arbitrator's authority over the dispute. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003) (A party can "waive its objection to the jurisdiction of the arbitrators by acquiescing in the arbitration with knowledge of the possible defect."); *Env't Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598, 607 (7th Cir. 2008); *Jones Dairy Farm v. Local No. P-1236, United Food and Commercial Workers Intern. Union,* 760 F.2d 173, 175 (7th Cir. 1985).

That is not to say that a party cannot challenge the validity of an arbitration agreement after a court has compelled arbitration. *See Wiepking v. Prudential-Bache Sec.*, 940 F.2d 996, 999 (6th Cir. 1991). A party that wishes to litigate its claims in court—but is nonetheless ordered to arbitrate those claims—may return to court *after* arbitration has ended to challenge that arbitration. In *Wiepking*, the defendants moved to compel arbitration after the plaintiffs filed a complaint in federal court involving the purchase and sale of securities. *Id.* at 997. Importantly, the plaintiffs contested the defendants' motion, and although they lost, they submitted to arbitration "only upon order of the court." *Id.* at 999. After the plaintiffs lost in arbitration, they returned to federal court to try to vacate the award, but the defendants argued that the plaintiffs waived their challenge by participating in the arbitration. *Id.* We rejected that argument, explaining that the plaintiffs "did not waive their right to appeal the district court's

---

**2**The FAA requires a "written provision" or "an agreement in writing to submit to arbitration." 9 U.S.C. § 2. But as the Ninth Circuit explained, the FAA does not require that the writing be signed by both parties. *Nghiem*, 25 F.3d at 1439.

order simply because they did what the court ordered them to do." *Id.* Because the district court's order compelling arbitration was not a final and appealable order, the plaintiffs had no choice but to arbitrate their claims and contest the court's order upon the completion of the arbitration. *Id.* Indeed, we noted that "[t]his is not a situation where plaintiffs consented to arbitration and are now seeking a second bite at the apple." *Id.* PolyOne, by contrast, not only consented to but *initiated* the arbitration that gave rise to this dispute—and waited to challenge the Agreement's arbitration provisions until after the arbitration was in motion. In doing so, PolyOne "missed the chance to come back later, before a court, and deny that [a valid] agreement to arbitrate existed." *Env't Barrier Co.*, 540 F.3d at 607.

PolyOne counters that a waiver is an *intentional* relinquishment of a claim or defense— and that a party cannot waive a claim that it did not know existed. PolyOne correctly notes that *Hall Street* did not answer whether an entire arbitration agreement is unenforceable if one provision in that agreement expands the grounds for judicial review. Not until the Tenth Circuit decided *Potawatomi* and "made new law," says PolyOne, was there any authority for the proposition that an invalid judicial-relief provision renders the entire arbitration agreement unenforceable. (Appellant Br. at 36.) And PolyOne argues that as soon as it learned of the Tenth Circuit's decision, it filed its complaint.

Changes in the law can excuse what might otherwise constitute a waiver, and PolyOne points us to an Eighth Circuit decision, *Ackerberg v. Johnson*, to highlight that principle. 892 F.2d 1328, 1329 (8th Cir. 1989). In *Ackerberg*, the Eighth Circuit held that the district court should have compelled arbitration after several intervening Supreme Court decisions changed the law governing the arbitrability of claims under the Securities Act of 1933. *Id.* The plaintiffs in that case brought claims under the 1933 Act against the backdrop of *Wilko v. Swan*, 346 U.S. 427 (1953), which held that 1933 Act claims were not arbitrable. But two years after the plaintiffs sued, the Supreme Court held that 1934 Act claims are arbitrable. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987). The defendants moved to compel arbitration, arguing that the Court's rationale in *McMahon* applied to 1933 Act claims as well, but the district court denied their motion. *Ackerberg*, 892 F.2d at 1331. Soon thereafter, however, the

Court held that 1933 Act claims are, in fact, arbitrable. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989).

On appeal, the plaintiffs in *Ackerberg* argued that the defendants waived their right to compel arbitration, no matter what the Court later held in *Rodriguez de Quijas*, by actively participating in the litigation (the defendants had engaged in discovery and filed a summary judgment motion). *Ackerberg*, 892 F.2d at 1331. The court rejected that argument, explaining that when a party's "delay in making a motion to compel arbitration is based on unfavorable or uncertain law, waiver should not be found." *Id.* at 1332. Before the Court decided *Rodriguez de Quijas*, the defendants had "no established right to compel arbitration of their 1933 Act claims," and *Wilko* affirmatively barred those claims from arbitration. *Id.* at 1333. But because the right to arbitrate those claims did not exist when the defendants participated in the litigation, the defendants could not have waived or voluntarily relinquished that right. To hold otherwise would "encourage litigants, in order to avoid a finding of waiver, to file motions they knew to be futile." *Id.*

This case is distinct from *Ackerberg*, however, because there was no negative authority (*e.g.*, a decision like *Wilko*) preventing PolyOne from obtaining declaratory relief when it chose instead to demand arbitration in 2010 and 2017. As soon as the Supreme Court issued *Hall Street* in 2008, PolyOne could have requested a declaratory judgment that the Agreement's judicial-relief provision was invalid. And PolyOne could have argued—as it does now—that striking the judicial-relief provision but keeping intact the other arbitration provisions would materially alter the legal substance of the Agreement, leaving the court no choice but to strike all of the Agreement's arbitration provisions.

PolyOne, however, claims it would have been futile to have requested a declaratory judgment before the Tenth Circuit decided *Potawatomi*. PolyOne is correct that before *Potawatomi*, no court had considered the effect of an invalid judicial-review provision on the broader agreement to arbitrate. But PolyOne overlooks the fact that the State of Oklahoma managed to persuade the Tenth Circuit that the judicial-review provision in its contract rendered the entire arbitration agreement invalid, even though the State lacked persuasive authority for its position. After the Supreme Court issued *Hall Street*, all PolyOne had to do was ask a court to

apply ordinary contract interpretation principles and perform a materiality analysis, which is what the *Potawatomi* court did. In that sense, *Potawatomi* did not break new ground. To be sure, having authority like *Potawatomi* to cite could have made PolyOne's argument more persuasive, but nothing prevented PolyOne from making its case.

PolyOne also warns that finding waiver here would conflict with the outcome in *Potawatomi*. True, the State of Oklahoma participated in the arbitration—through completion—before challenging the contract's judicial review provision in federal court. But *Potawatomi* is distinguishable in two main ways. First, in *Potawatomi*, the party that challenged the arbitration agreement (the State) was not the party that demanded arbitration (the Nation). *Potawatomi*, 881 F.3d at 1230–31. Here, of course, PolyOne was the party to demand arbitration and later challenge the Agreement's arbitration provisions. Second, the Nation did not argue that the State waived its challenge to the arbitration agreement, and the Tenth Circuit's decision does not address waiver. The Nation may well have forfeited its waiver argument—but that is not the case here.

As a last resort, PolyOne asks this court to rule on the merits, even if it has waived its ability to challenge the Agreement, citing *In re Morris*, 260 F.3d 654 (6th Cir. 2001). In that case, we restated the general rule that "appellate courts do not consider any issue not passed upon below" but also noted that "exceptional cases or particular circumstances" may justify departing from that rule. *Id.* at 663, 664 (internal quotation marks and citations omitted). We expressed openness to considering an issue presented for the first time on appeal to avoid "a plain miscarriage of justice" or when our resolution of the new issue would "materially advance the progress of . . . litigation." *Id.* at 664 (quotation marks and citations omitted; alterations in original).

PolyOne's reliance on *Morris* falls short for three reasons. First, *Morris* appears to address forfeiture, not waiver, and those two terms are not interchangeable. In *Morris*, the debtor failed to respond to the creditor's summary judgment motion during the bankruptcy proceedings, so the creditor argued on appeal that the debtor could not raise any substantive legal arguments before this court. Missing a deadline amounts to forfeiture, which the Supreme Court described as "the failure to make the timely assertion of a right." *Olano*, 507 U.S. at 733.

Waiver, by contrast, is an "intentional relinquishment or abandonment of a known right." *Id.* (citation omitted). This is not a case of one party failing to raise an argument before the district court and asking for our leniency on appeal. To the contrary, the substantive legal issues PolyOne raises on appeal appear consistently in PolyOne's briefing below. Second, there is no risk of a "miscarriage of justice" by declining to address PolyOne's substantive arguments because again, PolyOne demanded the arbitration it now seeks to challenge. Finally, it is far from clear that by reaching the merits of PolyOne's claim, we would hasten the end of the litigation between PolyOne and Westlake. Although our decision would put to rest questions about the validity of the judicial-review provision, it would not end the underlying dispute between the two parties. Indeed, if we were to hold that the arbitration provisions are unenforceable, the parties would simply bypass arbitration and head directly to federal court whenever they contest their share of the cleanup costs at the Superfund site—and there is no foreseeable end to those recurring disputes.

There is one final, important issue to consider (albeit not one that PolyOne has raised). As we noted, PolyOne presents a strong case that the Agreement's judicial-relief provision is invalid under the FAA. And if that provision is invalid, it raises the following question: can we turn a blind eye to a contract that violates federal law, simply because one party has waived its challenge to that contract?

It is a basic principle of contract law that a court "may refuse to enforce a contract on grounds of illegality where the contract has a direct objective or purpose that violates the federal or a state Constitution, a statute, an ordinance, or the common law." *Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005) (citation omitted); *see also Martello v. Santana*, 713 F.3d 309, 313 (6th Cir. 2013) (interpreting Kentucky law). But Kentucky law tolerates the waiver of certain illegality arguments. *See Crowder v. Stinson*, 401 S.W.2d 761, 762 (Ky. 1966) ("Appellant's answer does not affirmatively or at all plead illegality of the contract."); *Brand v. Howell*, No. 2003-CA-000972-MR, 2004 WL 1229265, *3 (Ky. Ct. App. June 4, 2004) ("We conclude the defense of illegality based on an alleged illegal contingent fee contract was waived."). While *Crowder* and *Brand* involve a defendant's failure to assert illegality as an

affirmative defense to a plaintiff's complaint, the underlying principle—that a party can waive the defense of illegality—logically applies to a party's waiver-by-conduct, too.

To be sure, there are cases when a court simply cannot ignore the illegality of a contract, no matter the parties' prior conduct. *See* 8 Richard A. Lord, Williston on Contracts § 19:12 (4th ed. 2012) ("[I]f the illegality is serious enough, a court may raise it sua sponte to avoid becoming an instrument of injustice.") Indeed, the "contravention of public policy [may be] so grave, as when an agreement involves a serious crime or tort, that unenforceability is plain." Restatement (Second) of Contracts § 178 cmt. b (1981). But "[i]n other cases the contravention is so trivial as that it plainly does not preclude enforcement." *Id.*

This Agreement does not involve activity so egregious that we must overlook PolyOne's waiver and reach the merits of its argument. The Agreement does not contemplate criminal activity or the commission of a tort. Nor did the parties include the judicial-relief provision to willfully contravene the law. When PolyOne and Westlake executed the Agreement in 2007, the Supreme Court had not decided *Hall Street*, so the judicial-relief provision was not plainly invalid. *Cf.* Restatement (Second) of Contracts § 179 cmt. d (1981) ("Whether a promise is unenforceable on grounds of public policy is determined as of the time that the promise is made.") Thus, we do not feel compelled to ignore PolyOne's waiver.

We conclude that PolyOne has waived its challenge to the judicial-relief provision, at least for the arbitration that began in 2017. This conclusion resolves this case. But we withhold judgment on whether PolyOne's prior conduct precludes it from ever challenging the Agreement's arbitration provisions in the future.[3]

B.

PolyOne also appeals the district court's denial of its request for a preliminary injunction to enjoin the arbitration it started in 2017. But the arbitration ended in May 2019, while this

---

[3]Westlake also argues that PolyOne's present challenge is separately precluded by res judicata and estoppel. PolyOne suggests that the district court rejected those arguments, but that is not true. Westlake raised these arguments below, but the district court did not resolve them after it had resolved the case on waiver. Similarly, we choose not to resolve those arguments. That does not mean, however, that Westlake is precluded from raising these arguments should they become relevant in the future.

appeal was pending. Because there is no arbitration to enjoin, the issue is moot. *See Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) (holding that request to enjoin participation in state court proceedings became moot once those proceedings had concluded); *Bank of New York Co. v. Northeast Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993) ("In general, an appeal from the denial of a preliminary injunction is mooted by the occurrence of the action sought to be enjoined.").

### III.

We conclude that PolyOne has waived its challenge to the Agreement's arbitration provisions—at least as it concerns the arbitration that began in 2017. Whether PolyOne has waived its ability to challenge those provisions for all time is a separate question not presently before us. We leave that question to another court, and in the meantime, we AFFIRM the district court's dismissal of PolyOne's complaint.